UNITED STATES, Appellee

v.

Ronald J. DAVIS, Sergeant
U.S. Army, Appellant

No. 14-0029

Crim. App. No. 20100815

United States Court of Appeals for the Armed Forces

Argued March 4, 2014

Decided May 23, 2014

OHLSON, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Brian D. Andes (argued); Colonel Kevin Boyle and Major Vincent T. Shuler (on brief); Lieutenant Colonel Peter Kageleiry Jr.

For Appellee:  Captain Daniel H. Karna (argued); Colonel John P. Carrell and Major Robert A. Rodrigues (on brief).

Military Judge:  Jacqueline L. Emanuel


**This opinion is subject to revision before final publication.**

United States v. Davis, No. 14-0029/AR

Judge OHLSON delivered the opinion of the Court.

We granted review in this case to determine whether the United States Army Court of Criminal Appeals (CCA) erred in finding that the military judge's failure to instruct on the special defense of defense of property was harmless beyond a reasonable doubt. We hold that the military judge's error was harmless beyond a reasonable doubt, and thus affirm the CCA.

## FACTS

In February 2010, Specialist (SPC) S.S., his girlfriend (A.R.), Appellant, and Appellant's wife (Mrs. Davis) went to a sports bar together. SPC S.S. and A.R. had arranged with Mrs. Davis to stay at the Davis's home after their night of drinking because it was close to the bar. Therefore, at the end of the evening, Mrs. Davis, A.R., and SPC S.S. returned to the Davis's home. However, Appellant stayed out with other friends.

At the Davis's, SPC S.S. and A.R. engaged in a verbal altercation both inside and in front of the house. At this point the stories diverge.

A. SPC S.S.'s Version of Events

SPC S.S. stated that after his argument with A.R. concluded, he began walking down the street away from A.R. SPC S.S. then saw Appellant speeding down the road toward the Davis residence, heard a crash or a bang, and started walking back

2

toward the Davis residence in an effort to find out what had happened and to calm down the situation.[1]

SPC S.S. testified that as he approached the Davis residence Appellant walked into the house and quickly reemerged. At this point, he and Appellant exchanged words and SPC S.S. tried to get an agitated Appellant to relax. Following this verbal exchange, Appellant approached SPC S.S. and attempted to punch him but missed. Appellant next pulled a handgun out of his back pocket, cocked it, leveled it at SPC S.S.'s face, and shouted, "I'll shoot you, I'll shoot her, I'll shoot everyone." A.R. then pulled SPC S.S. away from Appellant and they left the Davis property shortly thereafter. On the drive home, SPC S.S. called his squad leader to report what had happened. A.R.'s testimony largely corroborated SPC S.S.'s.

B. Appellant's Version of Events

Appellant stated that he returned to his home after receiving a text message from Mrs. Davis stating that SPC S.S. and A.R. were arguing and it was getting out of control. En route to his home, Appellant passed SPC S.S. walking down the street a couple of doors down from his home. After he pulled into his driveway, Appellant testified that he told his wife "to

---

[1] It is unclear what made the noise SPC S.S. heard. Appellant denied hitting anything, but A.R. testified that Appellant kicked Mrs. Davis's car after he pulled into the driveway. Mrs. Davis later discovered that her taillight was damaged, but was unsure what had happened to it.

get the hell in the house," told A.R. to get off his property, and yelled down the street at SPC S.S. "to get the hell out of here."

Appellant stated that he then went straight into his house, but the door did not shut all the way behind him.  On the way to his bedroom, Appellant noticed his pistol was still on the kitchen table from when he had cleaned it earlier in the day. Appellant picked up the handgun and put it in his back pocket with the intention of putting it in the safe and then going to sleep.  Before he placed the pistol in the safe, however, Appellant noticed that Mrs. Davis was not in the house and the front door was slightly ajar.  Appellant decided to go to the door and tell Mrs. Davis to come inside.  As he approached the door, Appellant stated that he saw SPC S.S. "coming in to the door," told him to leave, and pushed him out of the doorway. Upon being pushed out, SPC S.S. approached the doorway again, asking "what the fuck [Appellant's] problem was."  Appellant then pushed SPC S.S. again, and told him "to get the hell out of here."  Appellant testified that SPC S.S. then lunged and swung at him.  In response, Appellant pushed SPC S.S. again, pulled his weapon from his back pocket, pointed it at SPC S.S. for twenty to thirty seconds, and repeated that SPC S.S. needed to leave.  Appellant stated that SPC S.S. started to cry and shake

4

and Appellant "could tell the threat was over." Mrs. Davis's testimony largely corroborated Appellant's testimony.

Regarding his state of mind, Appellant testified that he knew SPC S.S. suffered from post-traumatic stress disorder (PTSD), and was aware that SPC S.S. was bigger than he was. He claimed that after he pushed SPC S.S. the first time, SPC S.S. looked more aggressive, which caused Appellant to worry about what would happen to his family and property if he was knocked out in a fist fight with SPC S.S.

In addition to the testimony of Appellant and his wife, trial defense counsel introduced witnesses at the court-martial to testify to SPC S.S.'s reputation for untruthfulness. Trial defense counsel also elicited testimony from SPC S.S. that he had anger issues and PTSD, but was on medication to treat both.

During closing arguments, trial defense counsel noted that, on the night in question, Appellant was simply exercising his right to defend his home and suggested that his actions were reasonable under the circumstances. Trial defense counsel specifically noted that SPC S.S. refused to leave Appellant's property after Appellant repeatedly told him to go.

The military judge provided a self-defense instruction that addressed the possibility that Appellant intentionally provoked the incident, as well as an instruction for simple assault with an unloaded firearm as a lesser included offense of assault with

5

a dangerous weapon.  Trial defense counsel did not request a defense of property instruction and the military judge did not sua sponte issue such an instruction.

## PROCEDURAL BACKGROUND

Contrary to his plea, a general court-martial composed of officer members convicted Appellant of one specification of simple assault with an unloaded firearm as a lesser included offense to assault with a dangerous weapon likely to produce death or grievous bodily harm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012).[2] The panel sentenced Appellant to a bad-conduct discharge, confinement for ninety days, and reduction to the grade of E-4. The convening authority credited Appellant with thirty-four days of confinement and approved the remainder of the adjudged sentence.

On appeal, the CCA held that the military judge's failure to instruct the panel sua sponte on defense of property was error because Appellant's testimony put defense of property "at issue."  United States v. Davis, No. ARMY 20100815, 2013 CCA LEXIS 562, at *6-*7, 2013 WL 3857408, at *2, (A. Ct. Crim. App. July 15, 2013) (memorandum opinion).  However, the CCA held that

---

[2] The military judge, sitting as a general court-martial, also convicted Appellant, pursuant to his pleas, of two specifications of failure to go to his appointed place of duty in violation of Article 86, UCMJ, 10 U.S.C. § 886 (2012).

the error was harmless beyond a reasonable doubt because: (1) there was "overwhelming evidence in the record as a whole" that Appellant did not give SPC S.S. a reasonable amount of time to comply with his demands to leave; (2) even if SPC S.S. heard Appellant's direction to leave his property, Appellant was the initial aggressor in the physical confrontation and his "initiation of a physical confrontation with SPC SS was not a reasonable, necessary, or justifiable use of force under the circumstances"; and (3) it was not plausible that Appellant believed his brandishing of a firearm was a necessary or reasonable response to any trespass that occurred under the circumstances. Id. at *8-*9, 2013 WL 3857408, at *3.

On Appellant's petition we granted review of the following issue: "Whether the Army Court of Criminal Appeals erred in finding that the military judge's failure to instruct on the affirmative defense of defense of property was harmless beyond a reasonable doubt."[3]

---

[3] The Rules for Courts-Martial (R.C.M.) suggest that the terms "special defense" and "affirmative defense" are interchangeable. R.C.M. 916(a) Discussion. We conclude that it is more accurate to refer to defense of property as a "special defense," and that the prosecution continuously bears "the burden of proving beyond a reasonable doubt that the defense did not exist." R.C.M. 916(b)(1).

United States v. Davis, No. 14-0029/AR

DISCUSSION

A.  Standard of Review

This Court reviews the adequacy of a military judge's instruction de novo.  United States v. Dearing, 63 M.J. 478, 482 (C.A.A.F. 2006).  Where an instructional error raises constitutional implications, this Court has traditionally tested the error for prejudice using a "'harmless beyond a reasonable doubt'" standard.[4]  Id. (quoting United States v. Wolford, 62 M.J. 418, 420 (C.A.A.F. 2006)).  In assessing prejudice under this standard, the Government must prove beyond a reasonable doubt that the error did not contribute to the accused's conviction or sentence.  Id. at 484.

B.  Defense of Property

As a threshold matter, regardless of which of the two competing narratives one believes is closer to the truth, we note that there are two distinct theories of defense of property implicated in this case -- defense of property in the context of an imminent threat to the property, and defense of property in the context of preventing a trespass or ejecting a trespasser

_____

[4] The granted issue discussed the military judge's error in terms of harmlessness beyond a reasonable doubt, and the Government did not contest the application of this standard or argue that plain error review should apply.  Therefore, as neither party raised the issue, and the outcome in this case would be the same under either standard of review, we will not address whether harmlessness beyond a reasonable doubt or plain error is the appropriate standard to apply.

8

United States v. Davis, No. 14-0029/AR

from the property.  See United States v. Lee, 3 C.M.A. 501, 507,
13 C.M.R. 57, 63 (1953); United States v. Regalado, 13 C.M.A.
480, 482–84, 33 C.M.R. 12, 14–16 (1963); see also Joshua
Dressler, Understanding Criminal Law § 20 (5th ed. 2009)
(discussing the various theories and rationales for defense of
property and defense of habitation).

Under the former theory, the accused must have had a
reasonable belief that his real or personal property was in
immediate danger of trespass or theft; and the accused must have
actually believed that the force used was necessary to prevent a
trespass or theft of his real or personal property.  2 Wayne R.
LaFave, Substantive Criminal Law § 10.6 (2d ed. 2003); Dep't of
the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook,
ch. 5, para. 5-7, NOTE 1 (2010) [hereinafter Benchbook]; see
also Lee, 3 C.M.A. at 507, 13 C.M.R. at 63 (stating that defense
of property must be carried out with "an honest belief that [the
force used] is necessary to prevent the loss of the property").
The accused's subjective belief that the force was necessary
must also be reasonable.  In determining the reasonableness of
the accused's subjective belief as to the amount of force
necessary, a panel must look at the situation through the eyes
of the accused and consider the circumstances known to the
accused at the time.  Benchbook, ch. 5, para. 5-7, NOTE 1; see
also R.C.M. 916(e) Discussion (discussing the related subjective

elements of self-defense); United States v. Dobson, 63 M.J. 1, 11 (C.A.A.F. 2006) (noting, in the context of self-defense, that the accused must have had an objectively reasonable ground to fear harm, and a subjectively reasonable belief that the amount of force used was necessary).

Under the latter theory, the accused may only use as much force as is reasonably necessary to remove an individual from his property after requesting that the individual leave and then allowing a reasonable amount of time for the individual to leave. Regalado, 13 C.M.A. at 482, 33 C.M.R. at 14 ("one who is lawfully in charge of premises, and has requested another to leave whom he had a right so to request, may lawfully use as much force as is necessary to remove such other, after allowing him a reasonable time to depart") (citations omitted); United States v. Richey, 20 M.J. 251, 252 (C.M.A. 1985); United States v. Marbury, 56 M.J. 12, 15–16 (C.A.A.F. 2001); Benchbook, ch. 5, para. 5-7, NOTE 3. A person or invitee who refuses to leave after being rightfully asked to do so becomes a trespasser and may not resist if only reasonable force is employed in ejecting him. Regalado, 13 C.M.A. at 482, 33 C.M.R. at 14; Marbury, 56 M.J. at 15 n.4; Benchbook, ch. 5, para. 5-7, NOTE 3. However, a property owner may not "purposely provoke a disturbance" on his property and then use his ownership of the property as an excuse for an unnecessary assault in ejecting another person.

United States v. Davis, No. 14-0029/AR

Regalado, 13 C.M.A. at 482, 33 C.M.R. at 14. If more force is used than is reasonably necessary to remove a trespasser, this force constitutes assault and battery. Id., 33 C.M.R. at 14.

   C.  Instructional Error

Military judges are required to instruct members on the elements of each offense and explain available defenses. Article 51(c), UCMJ, 10 U.S.C. § 851(c) (2012); R.C.M. 920(e)(3) (requiring military judges to instruct on "any special defense under R.C.M. 916 in issue");[5] United States v. Schumacher, 70 M.J. 387, 389 (C.A.A.F. 2011); Wolford, 62 M.J. at 422 ("If there is 'some evidence' of a possible defense . . . the military judge is duty bound to give an instruction even if the instruction was not requested by the parties." (citation omitted)). However, military judges also have broad discretion in how to craft such instructions. United States v. Smith, 50 M.J. 451, 455

_____

[5] Although, R.C.M. 916 does not expressly list defense of property as a special defense, this Court and its predecessor have long recognized defense of property as an available defense in the military justice system. See, e.g., Regalado, 13 C.M.A. at 482, 33 C.M.R. at 14; Marbury, 56 M.J. at 15; Lee, 3 C.M.A. at 507, 13 C.M.R. at 63. Furthermore, R.C.M. 916(a) states that "defenses" as used in the rule include "any special defense which, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly or partially, criminal responsibility for those acts." Defense of property is such a defense. See 2 LaFave, supra § 10.6 (characterizing defense of property as a justification-type defense). Additionally, the Benchbook provides that a "military judge must instruct, sua sponte, on defense of property when it has been raised by some evidence." Benchbook, ch. 5, para. 5-7, NOTE 1.

11

(C.A.A.F. 1999). A matter is "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." R.C.M. 920(e) Discussion.

Appellant's testimony about the underlying events in this case sufficiently put both theories of defense of property "at issue." Appellant's testimony that he was worried about what would happen to his property if he got knocked out was "some evidence" that members could have relied upon to find that Appellant believed his property was in immediate danger. Similarly, his testimony that he wanted SPC S.S. to leave his property was "some evidence" that the members could have relied upon to find that Appellant sought to use force to remove a trespasser from his property.

Therefore, we agree with the CCA that the military judge erred and should have sua sponte provided instructions for both theories of defense of property.

D. Prejudice

Turning to prejudice, we will consider the military judge's error by applying the harmless beyond a reasonable doubt standard -- i.e., could a rational panel have found Appellant not guilty if they had been instructed properly? Dearing, 63 M.J. at 482 ("'The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is

12

whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" (quoting Wolford, 62 M.J. at 420)). We find that a rational panel could not have found Appellant's actions reasonable under either theory of defense of property.

First, even if a rational panel believed Appellant's version of events, there is no basis to conclude that a rational panel could have found Appellant's belief that his property was in immediate danger to be reasonable. There was no evidence that SPC S.S. damaged the property, threatened the property, or intended to damage the property. Furthermore, there is no basis to conclude that a rational panel could have found that the threat of force employed by Appellant was reasonable. Even if the panel fully believed Appellant's version of events, at most, SPC S.S. walked briskly toward the front door and took an ineffectual swing at Appellant after Appellant had pushed him twice. Therefore, Appellant's brandishing of a firearm was a disproportionate and unreasonable response under the circumstances.

Second, while a rational panel could have found that Appellant rightfully asked SPC S.S. to leave, there is no basis to conclude that a rational panel could have found Appellant gave the victim a reasonable amount of time to leave before he brandished the firearm. According to Appellant's own version of

events, Appellant marched straight into his house without confirming that SPC S.S. had heard his command to leave, confronted SPC S.S. as soon as he emerged from the house, and pointed the gun at SPC S.S. contemporaneously with his renewed demand that SPC S.S. leave. Nor could a rational panel have concluded that Appellant threatened an amount of force reasonably necessary under the circumstances to remove SPC S.S. from his property. As stated above, even under Appellant's version of events, Appellant was the initial aggressor in the confrontation with SPC S.S. and pointing a firearm at SPC S.S. was an unreasonable response under the circumstances.

Finally, we note that the members apparently rejected Appellant's self-defense argument even though the military judge appropriately instructed the members on Appellant's right to self-defense based on the same circumstances Appellant asserts warrant a defense of property instruction.

In sum, a rational panel could not have found Appellant's actions reasonable in the context of responding to an immediate danger to his property, or in the context of removing a trespasser from his property. Therefore, the military judge's error did not contribute to Appellant's conviction or sentence.

CONCLUSION

We hold that the military judge's error was harmless beyond a reasonable doubt and affirm the judgment of the United States Army Court of Criminal Appeals.