**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman COURTNEY D. WADDELL**
**United States Air Force**

**ACM 38500**

**11 February 2015**

Sentence adjudged 17 October 2013 by GCM convened at Tinker Air Force Base, Oklahoma. Military Judge: Matthew S. Ward.

Approved Sentence: Bad-conduct discharge, forfeiture of $200 pay per month for 5 months, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Major Robert Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The adjudged sentence was a bad-conduct discharge, restriction for 2 months, forfeiture of $200 pay per month for 5 months, reduction to E-1, and a reprimand.

---

[1] The charged events took place on 23 February 2013, meaning the appellant was charged and convicted under the current version of Article 120, UCMJ, 10 U.S.C. § 920, which applies to offenses committed on or after 28 June 2012. *See Manual for Courts-Martial, United States*, Part IV, ¶ 45 (2012 ed.).

Except for the 2 months restriction, the convening authority approved the sentence as adjudged.

Before us, the appellant argues that (1) the evidence was factually and legally insufficient to support the finding of guilt, (2) the military judge erred by refusing to give a requested mistake of fact instruction, and (3) the military judge erred by overruling a defense evidentiary objection based on foundation. We disagree and affirm.

*Background*

The appellant lived off base with two roommates, one male and one female. The male roommate had a girlfriend, Senior Airman (SrA) SF. All of these individuals belonged to a larger group who would drink and socialize at the house of the appellant and his roommates, at bars, and elsewhere. The appellant and SrA SF were good friends and both worked for security forces.

In early December 2012, the appellant met SrA SF's younger sister, LF. This led to LF joining the social group and then a dating relationship between LF and the appellant. During late-December 2012 and January 2013, the appellant and LF engaged in consensual sex on eight or nine occasions. Soon, however, LF decided she no longer desired a relationship with the appellant. LF told the appellant and others she wanted him to stop contacting her through text messages and otherwise, and the dating and sexual relationship between LF and the appellant came to an end.

Although they were no longer dating, LF and the appellant remained members of the same social group, and LF continued to attend gatherings at the house of the appellant and his roommates. In the early morning hours of 23 February 2013, after a night of heavy drinking, LF passed out at the appellant's house. She later awoke in the appellant's bed and found him having sex with her. This is the basis for the charge and specification in this case.

*Legal and Factual Sufficiency*

The appellant argues the evidence is legally and factually insufficient to sustain his conviction because of inconsistencies in LF's statements and because the evidence did not show she was substantially incapacitated. We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*,

25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The appellant was charged with sexual assault, in violation of Article 120(b)(3), UCMJ. The specification stated the appellant did "commit a sexual act upon [LF], by causing penetration of [LF]'s vulva with [his] penis, when [LF] was incapable of consenting to the sexual act because she was impaired by an intoxicant, to wit: alcohol, a condition that was known or reasonably should have been known by the accused." The elements of this offense, as charged, are that the appellant (1) committed a sexual act upon LF and (2) did so when LF was incapable of consenting to the sexual act due to impairment by an intoxicant and that her condition was known or reasonably should have been known by the accused. *See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45.a.(b) (2012 ed.).

There can be little doubt that, at the time of the offense, LF was highly intoxicated. On the evening of 22 February 2013, she was celebrating her 21st birthday. LF and two of her friends had dinner at a local restaurant, where LF had one alcoholic drink. They then went to the appellant's house, arriving around 2145. Someone suggested that, because she was turning 21 years old, LF should attempt to consume 21 alcoholic drinks. LF agreed, and this became her goal for the night. LF was at the appellant's house for about two hours, during which time she drank 10 to 12 shots of tequila and vodka, and sipped another mixed drink. Upon doing so, according to her testimony, she began to feel "drunk" but not "super drunk."

The group then departed the appellant's house for a nightclub about 30 minutes away. While there, LF danced and kissed Airman (Amn) JG and expressed interest in having sex with him. LF had about five alcoholic drinks and became drunk to the point of struggling to stand up. She drank a final shot of alcohol as the club was closing around 0200.

LF, Amn JG, and two other friends then drove to the appellant's house. During the drive, LF felt sick, and she struggled to avoid vomiting in the car. Arriving at the appellant's house, LF ran straight to the bathroom and began to throw up.

LF recalled the appellant entering the bathroom while she was vomiting. The next thing she remembered was awakening in a dark room. She was lying on her back, and a male—whom she could not see—was on top of her, with his penis inside her vagina. LF was not participating in the sexual activity, but the male continued to have intercourse with her until he withdrew his penis and ejaculated onto her stomach. LF initially thought this person was Amn JG. When the male arose from the bed and turned on the light, however, she saw it was the appellant. LF observed that both she and the appellant were naked, before she fell back to sleep in the appellant's bed.

The appellant does not dispute that he had sexual intercourse with LF. The evidence also shows the appellant was fully aware of LF's state of intoxication when he had sex with her. He was at the house during her heavy drinking earlier in the evening, and he was with the group at the nightclub while she continued to drink and struggled to remain upright. At some point after the group returned to his house, the appellant told Amn JG—whom LF had been kissing earlier in the evening—that LF did not want him around. Amn JG and the others then departed, leaving the appellant alone with LF in the house.

LF's sister, SrA SF, was on duty throughout the night in question and had several phone conversations with the appellant that clearly showed he was aware LF was highly intoxicated. Around 0230, the appellant called SrA SF to tell her LF had arrived safely at his house from the nightclub. The appellant advised that LF was "really drunk," and he promised to take care of her. SrA SF managed to speak to LF on the phone, and she sounded "pretty drunk," she was slurring her speech, and "not making that much sense." After LF left the phone call to throw up, the appellant told SrA SF he would put LF to sleep in his bed. When SrA SF protested, the appellant urged SrA SF to trust him, saying he would not "try anything" or "touch her," and that he would keep his clothes on. The appellant later reported to SrA SF that LF was then asleep and there was no need to move her; he would sleep on the couch.

Still concerned, SrA SF called the appellant's female roommate asking her to remove LF from the appellant's bed. Around 0330, the roommate attempted to do so, but LF refused to move. The appellant told the female roommate that he too had tried to move LF from his bed but she had refused, and he was now going to sleep in the bed.

The following day, LF reported the incident to at least two friends. Two days later, LF told her sister she had awoken to find someone having sex with her and she had no idea where she was. LF also confronted the appellant. Through text messages in the days following the incident, the appellant repeatedly apologized to LF for having sex with her while she was intoxicated. After LF texted the appellant that she "had no [i]dea what was going on" and that she did not know it was the appellant having sex with her until he turned on the lights, he responded:

All I'm going to say is I'm sorry yea I knew u [sic] were drunk and so was I but I wasn't hammered and shouldn't of [sic] let that happen and I'm sorry honestly it was a mistake that and [sic] I wish I would of [sic] stopped and thought things through. . . . But honestly from the bottom of my heart I'm sorry. It was a mistake that I wish I could take back. . . . I'm truly sorry this is how your [sic] going to remember me . . . . But I understand and I feel like sh[*]t for it. I'm sorry . . . .

There are numerous indications that, in the weeks preceding the sexual assault, LF rebuffed the appellant's repeated efforts to resume their dating relationship. Following their breakup, LF did not kiss the appellant, dance with him, nor express any physical or romantic interest in him. Furthermore, the evidence at trial suggested LF had no desire for revenge or any motive to fabricate the allegations. Although she was upset by what the appellant had done, she wanted to quickly and quietly put the situation behind her. When she finally discussed the sexual assault with investigators, LF did so only reluctantly, after being approached by them in response to information they learned from others.

Viewing the evidence in the light most favorable to the Government, we are convinced a rational factfinder could find beyond a reasonable doubt the appellant was guilty of the offense. Upon our own review of the evidence in the record of trial, we are personally convinced of the appellant's guilt beyond a reasonable doubt.

*Instruction on Mistake of Fact as to Consent*

We review a military judge's instructions de novo. *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006). "The military judge bears the primary responsibility for ensuring that mandatory instructions . . . are given and given accurately." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003); *see also* Rule for Courts-Martial (R.C.M.) 920(a). If an affirmative defense is reasonably raised by the evidence, the military judge has a sua sponte duty to instruct the members on that defense. *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000*)*.

In discussing proposed findings instructions, trial defense counsel argued that the affirmative defense of mistake of fact as to consent had been raised by the evidence, as the appellant "could have reasonably mistaken [LF's] actions for consent" based on their prior dating relationship, their prior history of engaging in consensual sexual intercourse while intoxicated, and LF's belief she may be engaging in intercourse with Amn JG on the evening in question. The military judge denied the request, believing the instruction would give the impression the appellant had to prove LF consented, thus creating an impermissible burden shift on the issue of consent like that identified in *United States v.*

*Prather*, 69 M.J. 339, 343–44 (C.A.A.F. 2011). The appellant argues on appeal that the military judge's failure to provide an instruction on mistake of fact as to consent constituted reversible error. We disagree.

Generally, mistake of fact is a defense if "the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." R.C.M. 916(j)(1). In such a circumstance, the accused does not deny that he committed the objective act at issue in the charge but denies criminal responsibility for it. R.C.M. 916(a).

The history of the mistake of fact defense relative to offenses under Article 120, UCMJ, is complicated. Under the standard mistake of fact defense, the mistake need only exist in the accused's mind if it goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact; but if it goes to a general intent or knowledge element, that belief must be reasonable under the circumstances. R.C.M. 916(j)(1). However, in 2006, Congress created a statutory affirmative defense of "mistake of fact as to consent" for certain sexual offenses, including aggravated sexual assault, the predecessor offense to the one charged in this case. *See MCM*, app. 28 at A28-5. Rule for Courts-Martial 916 was amended accordingly. R.C.M. 916(j)(3). To constitute this defense, the mistake must have existed in the mind of the accused *and* must have been reasonable under all the circumstances. *Id.* After certain aspects of the statute's burden shifting regime were deemed unconstitutional, Congress revised the statute, with the changes effective 28 June 2012. In place of specific affirmative defenses, the new Article 120, UCMJ, authorizes an accused to raise any applicable defenses available under the Code or the R.C.M.s. *See MCM*, app. 23 at A23-15 (allowing an accused to raise a mistake of fact defense without the unworkable burden shift). R.C.M. 916(j)(3) remains in the *Manual* and still uses the language from the statutory affirmative defense, though it has not been modified to refer to the new Article 120, UCMJ, offenses.

This history, plus the creation of Article 120(b)(3), UCMJ, criminalizing sexual conduct with unaware or impaired victims, has led some commentators to question whether or when mistake of fact as to consent is an affirmative defense for that offense.[2]

---

[2] *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3-45-14, note 17 (13 November 2013) (noting that for a sexual assault charge, the military judge must carefully evaluate the evidence presented by both sides to determine the applicability of the defense of "mistake of fact as to consent to the sexual conduct" and, if that defense is applicable, should instruct the panel that the mistake must be honest and reasonable); Zachary Spilman, *Zachary D. Spilman on Consent and Mistake of Fact as to Consent: Defenses to Adult Sexual Offenses under the Uniform Code of Military Justice*, LEXISNEXIS EMERGING ISSUES ANALYSIS 7277 (26 November 2014) (opining that the language of Article 120(b)(3), UCMJ, includes a mistake of fact defense because an accused's honest and reasonable belief about the victim's ability to consent would disprove the element of knowledge (which requires that the accused "knew or reasonably should have known" of the victim's circumstances)); Jim Clark, *Professor Jim Clark on Analysis of Crimes and Defenses 2012 UCMJ Article 120, Effective 28 June 2012*, LEXISNEXIS EMERGING ISSUES ANALYSIS 6423 (25 June 2012) (opining that key changes to the 2012 Article 120 have removed mistake of

It is not necessary for us to resolve this question in this case because, even if we assume arguendo that the affirmative defense applies to a case brought under this provision of Article 120, UCMJ, we find the appellant was not prejudiced by the military judge's failure to give such in instruction.

If an instructional error raises constitutional implications, such error is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002); *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014). Based on our review of the record and considering the instructions provided, we find the panel would have concluded beyond a reasonable doubt that (1) the accused did not actually believe LF consented to the charged sexual conduct and (2) even if he did have such a mistaken belief, that mistake was unreasonable.[3] This conclusion is supported by the evidence of their lack of a relationship prior to this incident, the events of the night in question, and the appellant's communications with LF after the incident.

Although LF and the appellant had a prior sexual and dating relationship, the evidence at trial was uncontroverted that LF broke off her relationship with the appellant several weeks prior to the offense and wanted nothing more to do with him romantically or sexually. LF's testimony and the records of their electronic correspondence establish that she bluntly and consistently rebuffed the appellant's repeated efforts to resume their relationship and that he acknowledged her lack of interest in him. Furthermore, although trial defense counsel stated the two had a history of engaging in sex while they were intoxicated, no evidence was presented at trial to support that claim. LF testified the two did drink alcohol together during their dating relationship, but there was no evidence that they were intoxicated during their sexual encounters.

The appellant's action on the night of the incident and over the following days further establish beyond a reasonable doubt that the appellant did not believe LF was

fact as to consent as a defense to most charges, that mistake of fact only applies to elements of the crime and not when an accused is merely asserting an alternative interpretation of facts, and that an accused's claim he reasonably should not have known of the victim's condition is not a "mistake" but simply evidence that a reasonable person would not have known of that condition); Major Mark Sameit, *When a Convicted Rape is Not Really a Rape: The Past, Present, and Future Ability of Article 120 Convictions to Withstand Legal and Factual Sufficiency Reviews*, 216 MIL. L. REV. 77, 117 (2013) (opining that the Government's burden to prove the elements of this offense eliminates the affirmative defense of mistake of fact).

[3] The military judge instructed on the defense of consent, telling the members evidence of consent to the sexual act is relevant to whether the prosecution has proven the elements beyond a reasonable doubt. The panel was also instructed that evidence LF consented to the sexual act may cause a reasonable doubt as to whether the accused knew or reasonably should have known that she was incapable of consenting due to impairment by an intoxicant because "if you determine that [she] did consent you have necessarily concluded that she was capable of consent." He also instructed the panel (1) the Government must prove beyond a reasonable doubt that LF did not consent to the sexual act; (2) her "lack of ability to consent" may be inferred from all the surrounding circumstances; (3) a sleeping, unconscious, or incompetent person cannot consent to a sexual act; and (4) evidence of LF's past sexual history with the appellant may be considered in determining if LF consented and whether the appellant knew or should have known she was incapable of consenting.

consenting and that any such belief was not reasonable. As described above, LF was highly intoxicated, and the appellant was aware of her condition, assuring LF's sister that he would take care of her and not touch her sexually. The following day, when LF asked the appellant why he had sex with her when he knew she was drunk, the appellant did not say he thought she had consented to the activity. When she pointed out to him that she was "passed out" and awoke to him having sex with her, he did not contest that statement.

Based on the totality of the evidence presented at trial, we are firmly convinced the Government would have successfully proven beyond a reasonable doubt that the mistake of fact defense did not exist. Therefore, we conclude beyond a reasonable doubt that any failure to instruct on mistake of fact did not contribute to the appellant's conviction. *See United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007).

*Evidentiary Objection Based on Foundation*

After LF arrived at the appellant's house from the nightclub, the appellant spoke telephonically with her sister, SrA SF, while she was at work. During some or all of their conversation, SrA SF was using her speakerphone. Listening in, a few feet away from SrA SF, was another individual, SrA RM. SrA RM testified at trial that he heard both the appellant and LF as they spoke to each other while on the other end of the line. SrA RM reported, "[LF] sounded drunk; slurred speech, had kind of a baby, you know, people get a baby voice when they're drunk."

Trial defense counsel objected to this description of how LF sounded on two grounds: lack of foundation and hearsay.[4] On appeal, the defense argues that the military judge abused his discretion when he admitted the evidence because the foundational requirements of Mil. R. Evid. 602 and 701 were not met. We disagree.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)) (internal quotation marks omitted).

Mil. R. Evid. 602 addresses the issue of personal knowledge. The Rule states, "A witness may not testify to a matter unless evidence is introduced sufficient to support a

---

[4] The appellant did not raise the latter issue on appeal. We have, nevertheless, considered the hearsay objection of trial defense counsel. In doing so, we find that (1) the testimony of Senior Airman (SrA) RM did not involve any statement made by LF, and (2) it was not offered for the truth of any matter asserted by LF. Rather, SrA RM's testimony was a description of *how* LF sounded when speaking. Thus, the testimony did not involve hearsay, and the military judge was correct in overruling the objection. *See* Mil. R. Evid. 801(c).

finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness." Mil. R. Evid. 701 sets forth the criteria for admitting the opinions of a lay witness:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of Rule 702.

In this case, the testimony of SrA RM complied with both Mil. R. Evid. 602 and 701. SrA RM testified that, on two or three occasions, he had socialized for some hours at the appellant's house while LF was present. SrA RM had engaged in conversations with LF, both when she was sober and when she had been drinking. Based on this, SrA RM had the requisite personal knowledge that it was LF on the other end of the telephone.

Likewise, the testimony of SrA RM complied with Mil. R. Evid. 701. SrA RM's testimony was rationally based upon his perceptions and his knowledge of LF, it was helpful in determining the level of intoxication LF was experiencing at that time (and thus whether LF was incapable of consenting to a sexual act due to impairment by an intoxicant), and it was not based in scientific, technical, or other specialized knowledge within the scope of Mil. R. Evid. 702.

Therefore, the military judge did not abuse his discretion in allowing SrA RM to opine that, when he heard LF on the phone, her speech was slurred and she sounded drunk. *See MCM*, app. 22 at A22-51 (stating that whether or not a person was drunk is within the potential scope of Mil. R. Evid. 701).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVE LUCAS
Clerk of the Court