*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
FULTON, CRISFIELD, and HITESMAN,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Corey J. SMITH**
Sergeant, (E-5), U.S. Marine Corps
Appellant

**No. 201800042**

Decided: 29 May 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judges: Lieutenant Colonel Mark D. Sameit, USMC (arraignment, trial); and Major John L. Ferriter, USMC (motions). Sentence adjudged 20 October 2017 by a general court-martial convened at Marine Corps Air Station Miramar, California, and Marine Corps Air Station Yuma, Arizona, consisting of officer and enlisted members. Sentence approved by convening authority: reduction to pay grade E-1, confinement for three years, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant: Lieutenant Commander Jeremy J. Wall, JAGC, USN.

For Appellee: Lieutenant George R. Lewis, JAGC, USN; Lieutenant Kimberly Rios, JAGC, USN.

Judge HITESMAN delivered the opinion of the Court, in which Senior Judge FULTON and Judge CRISFIELD joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2**

_____

HITESMAN, Judge:

The appellant was convicted, contrary to his pleas, of three specifications of sexually assaulting two Marines in violation of Article 120, Uniform Code of Military Justice (UCMJ).[1] In his sole assignment of error, the appellant asserts that the military judge improperly restricted the trial defense counsel's cross-examination of both victims. We agree the military judge abused his discretion but find that the error was harmless beyond a reasonable doubt and affirm the findings and sentence.

## I. BACKGROUND

Two female Marines, MC and AS, were drinking alcohol, talking, and watching videos in AS's barracks room when the appellant invited AS to his room around 0200 in the morning. AS declined but invited appellant over to her room to drink and hang out with her and MC. The appellant was senior to both AS and MC and had been friends with AS for more than 18 months but had not talked to MC prior to that night. The three drank, talked, and watched videos until MC fell asleep around 0400. The appellant and AS continued to drink and talk for another hour until AS asked appellant to leave so she could sleep. Instead of the leaving the room, the appellant got into bed with MC who was still sleeping. The appellant penetrated her vagina with his fingers until MC awoke and told him, "[n]o, leave me alone."[2] Appellant got up and moved across the room and got into bed with AS who was now asleep. The appellant penetrated AS's vagina with his fingers until she awoke and told him to leave because the "bed was too small."[3] The appellant then left AS's room and returned to his own room.

MC woke up later that morning and immediately went to the appellant's room and confronted him. Appellant "looked scared"[4] and told MC that he "thought it was a dream."[5] While MC went to confront the appellant, AS

---

[1] 10 U.S.C. §§ 920 (2016). The military judge merged the two specifications pertaining to one of the victims for findings and sentencing leaving the Court to review one specification of sexual assault for each victim. Appellate Exhibit (AE) XXVII; Record at 882, 996-98.

[2] R. at 670-672.

[3] R. at 873.

[4] R. at 677.

[5] *Id.*

reported the sexual assault to her unit uniformed victim advocate (UVA). After MC had returned to AS's room, the appellant texted AS stating that he was "scared," "thinking about killing" himself, and that he was "so sorry."[6] The appellant next texted his best friend that he "did the dumbest shit ever"[7] and "thought it was all a f***ing dream."[8] Finally, appellant drafted an apology note to MC stating "I apologize for my actions that night. I feel embarrassed, disgusted, and pitiful for even thinking it was the right thing to do."[9]

When Naval Criminal Investigative Service (NCIS) agents interviewed the appellant, he was cooperative in recounting the facts of the evening. He provided detailed information about having consensual sexual intercourse with MC to include his belief that he used a condom. However, he provided no detail about his interaction with AS and appeared surprised when NCIS agents informed him that AS was also reporting that he sexually assaulted her.

Less than 12 hours prior to the assault, AS and MC exchanged text messages discussing getting "super high"[10] on "those little pills"[11] concluding the conversation with: "Haha well maybe."[12] The appellant's trial defense counsel sought to use these text messages to cross-examine MC and AS to expose their suspected drug use during the time of the assault. When asked by the trial counsel, both witnesses denied using drugs prior to the assault and neither remembered exchanging text messages about getting high.[13] For tactical reasons relating to the relationship between AS and the appellant, the trial defense counsel did not initially cross-examine AS at all. However, during cross-examination of MC, the military judge sustained a government objection to the trial defense counsel's question: On "[t]he afternoon of the

---

[6] R. at 651; Prosecution Exhibit (PE) 2.

[7] R. at 651; PE 2.

[8] R. at 630-31; PE 7 at 1.

[9] PE 10.

[10] AE LXXXIII.

[11] AE LXXXIII.

[12] *Id.*

[13] Just prior to closing for deliberations, a member asked the court "in reference to the question of drugs, was this inadmissible, or is this pertinent to the case?" R. at 852. The military judge then instructed the members, without clarifying which drug statements were being addressed, that he "ruled that that is inadmissible, and you should not consider that in any way." R. at 854.

incident, at one point, you were asked if you wanted to get super high that night?"[14] The military judge only permitted the trial defense counsel to ask MC if "she was on any illicit substances that night."[15]

After closing arguments, the members asked to review AS's statements to NCIS and her text message report to the UVA. The military judge reopened the court-martial and allowed the trial counsel to recall AS to lay a foundation for her statements and text messages to the UVA. Because the trial defense counsel asserted that they had made a tactical decision not to cross-examine AS during her initial testimony, the military judge allowed an expanded cross-examination of AS during her recall testimony. However, the military judge again restricted the cross-examination by not allowing the trial defense counsel to "go into the drug statement, regarding drugs."[16] The trial defense counsel cross-examined AS but did not ask about the text message exchange in accordance with the military judge's instructions.

Additional facts necessary to resolve the assigned error are included below.

## II. DISCUSSION

### A. Excluding Relevant Evidence

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). The military judge "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 403, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). When a military judge balances the competing interests in admitting or excluding evidence, the ruling will not be overturned unless there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). When a military judge fails to articulate a MIL. R. EVID. 403 balancing analysis on the record, the ruling receives less deference. *Id.* When the judge fails to even conduct the MIL. R. EVID. 403 analysis, the ruling receives no deference at all. *Id.*

---

[14] R. at 685.

[15] R. at 686.

[16] R. at 860.

Here, the military judge acknowledged that trial counsel first elicited testimony from AS about drug use and the discussion about getting high, but ruled that the trial defense counsel was not to "draw out any inferences that [MC's] been using [drugs] or anything like that."[17] The military judge went on to state explicitly, "I find that the probative value of [the text messages are] substantially outweighed by the danger of unfair prejudice. The real probative value is . . . whether or not her ability to perceive was being [a]ffected."[18]

However, the military judge did not specifically identify the prejudicial impact of the inference that MC was using drugs, and therefore did not, on the record, balance that impact against the correctly identified probative value of "whether [MC's] ability to perceive was being affected."[19] Likewise, after reopening the case, the military judge reminded trial defense counsel that she was prohibited from cross-examining AS on "the drug statement"[20] referring to the text message exchange discussing the use of "little pills" to get "super high."[21] The military judge neither identified the prejudicial impact nor attempted to balance the impact with the probative value of attacking AS's ability to perceive.

Since the military judge failed to conduct a complete MIL. R. EVID. 403 balancing test and articulate his analysis on the record for limiting the cross-examination of both witnesses, we afford his ruling less deference and examine the record for ourselves. The military judge's rulings only allowed the trial defense counsel to ask AS and MC whether they had used "illicit substances"[22] on the evening of the assault. This did not allow the trial defense counsel the opportunity to explore and expose the weaknesses in AS's or MC's credibility by confronting them with their own statements that suggested they intended to use drugs that evening. Instead, the military judge's ruling limited the appellant to the witnesses' uncontested denial. Had the military judge allowed the trial defense counsel to confront the witnesses with their own text messages, the members might have been less inclined to believe them when they both claimed that they did not remember the text message exchange. If, after being shown the text message exchange, the witnesses still denied having any memory of it, their credibility might have been further

---

[17] R. at 686.

[18] R. at 686-687.

[19] *Id.*

[20] R. at 860.

[21] AE LXXXIII.

[22] R. at 686.

undercut in the eyes of the members. Additionally, the military judge's ruling did not permit the trial defense counsel to attack the reliability of the witnesses' testimony or their ability to perceive the events occurring around them by arguing that they may have been under the influence of drugs during the assault, despite their testimony to the contrary.

The government argues that the appellant was permitted to cross-examine both witnesses on the only relevant fact – whether they were using illicit drugs that night. The appellant argues that the text messages were critical to their case because there was no other evidence that the witnesses' actually used drugs that night prior to the assault. Moreover, the appellant argues that the members should have been made aware of the text messages because it may have explained the erratic behavior of the witnesses prior to and after the assault.

MIL. R. EVID. 403 "addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." *United States v. Collier,* 67 M.J. 347, 354 (C.A.A.F. 2009). Here, the military judge asserted that the content of the text messages was "certainly extremely prejudicial" without further explanation.[23] The military judge made no findings on the record regarding the specific potential prejudicial impact to either MC, AS, or to the trial process that might be created by the cross-examination of the two witnesses regarding their discussion about getting high just hours before they were sexually assaulted. From the record, it appears that the military judge was incorrectly concerned with only the prejudice to the individual witnesses, and gave no consideration to the prejudicial impact on the trial process of the fact-finder determining the veracity of the evidence. Presumably the potential prejudicial impacts to the process are that the members would be predisposed against MC and AS if they were painted as drug users and therefore generally bad people, the members would confuse the issues, or the members would be misled by that characterization. None of these were articulated by the military judge, and yet all of these potential impacts could be easily dispelled by appropriate instructions to the members. *See Collier*, 67 M.J. at 355 ("Members are presumed to follow the military judge's instructions to consider evidence for a proper purpose . . . and not let personal beliefs or feelings affect their determinations about witness credibility.").

The trial defense counsel's proposed line of questioning, and the inferences fairly drawn from it, are relevant to the issue of the witnesses' ability to perceive. We find that the probative value of the proposed cross-examination is not substantially outweighed by the danger of unfair preju-

---

[23] R. at 686.

dice, confusing the issues, or misleading the members. Accordingly, we find that the military judge abused his discretion because his ruling lacked an articulated and supportable legal basis.

## B. Constitutional Error

Finding that the military judge's ruling was an abuse of discretion, our focus now turns to whether that error violated the appellant's right to confront the witnesses against him under the Sixth Amendment.[24] The right of confrontation under the Sixth Amendment includes the "constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). The right to confront witnesses through cross-examination is an essential component of due process in a court-martial. *United States v. Sullivan*, 70 M.J. 110, 123 (C.A.A.F. 2011) (Effron, C.J., dissenting) (citing *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). "Cross examination allows the accused to expose to the [members] the facts from which [they] . . . could appropriately draw inferences relating to the reliability of the witness." *Collier*, 67 M.J. at 352. An accused has the right to attack the credibility of a witness through cross-examination and extrinsic evidence showing "bias, prejudice, or any motive to misrepresent," MIL. R. EVID. 608(c), or by showing that the witness lacked a capacity to observe and perceive. *See United States. v. Sojfer*, 47 M.J. 425, 427 (C.A.A.F. 1998) (finding the "capacity to observe, remember, and recollect . . . are grounds for impeachment" similar to bias.).

> While trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination, an accused's Confrontation Clause rights are violated when a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of examination.

*United States v. Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013) (internal citations and quotation marks omitted).

In this case, the credibility of AS and MC and the reliability of their testimony was central to the government's case and critical to the appellant's defense. This is especially true with regards to AS because the appellant admitted to having sex with MC but had no recollection of any sexual activity with AS. The trial defense counsel effectively cross-examined both witnesses, drawing out numerous beneficial facts, inconsistent statements, and biases

---

[24] U.S. CONST. amend. VI.

that tended to impeach their credibility as well as cast doubt on the reliability of their testimony and their ability to perceive.

At the time of the military judge's erroneous ruling, it should have been apparent that the additional cross-examination regarding the text message discussion about getting high in the hours before the assault might have resulted in the members' having a "significantly different impression of the witnesses' credibility." *United States v. Moss,* 63 M.J. 233, 237 (C.A.A.F. 2006). Accordingly, we find that the military judge's erroneous ruling violated the appellant's Sixth Amendment confrontation rights because the witnesses' testimony was central to the government's case especially with respect to AS, the appellant's theory of the case was that AS and MC were both lying, and the limitation on cross-examination prevented him from further exposing the witnesses' lack of credibility and inability to perceive.

## C. Harmless Beyond Reasonable Doubt

Finding constitutional error, we now test for prejudice using a harmless beyond reasonable doubt standard. *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014) (quoting *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006)). Constitutional error is harmless if "it appears 'beyond reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "Whether a constitutional error was harmless beyond a reasonable doubt is a question of law reviewed *de novo*." *United States v. Jasper*, 72 M.J. 276, 282 (C.A.A.F. 2013) (quoting *United States v. Tearman*, 72 M.J. 54, 62 (C.A.A.F. 2013)).

When a military judge erroneously limits an accused's ability to cross-examine a witness, the government must "show that there is no reasonable possibility that the error contributed to the contested findings of guilty." *Jasper*, 71 M.J. at 282 (quoting *Collier*, 67 M.J. at 355). "[T]he inquiry should focus on whether the military judge's ruling essentially deprived Appellant of his best defense that may have tipped the credibility balance in Appellant's favor." *Id.* (quoting *Collier*, 67 M.J. at 356). To determine whether the error warrants relief, we do not need to conclude that the appellant's strategy would have succeeded, rather we weigh:

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the over-all strength of the prosecution's case.

*Id*. (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

8

The appellant's case hinged on the credibility and reliability of AS and MC. The appellant's theory was that AS and MC were both mistaken about the identity of their assailant—that there was an unknown male who actually assaulted them,[25] that MC was lying to avoid accountability for underage drinking and fraternization, and that AS was lying because she felt sorry for MC. Undercutting the credibility of AS was especially important for the appellant because he admitted to NCIS that he had sexual intercourse with MC but not AS. Likewise the government's case with respect to AS hinged on her credibility as there were no other witnesses and no physical evidence supporting her testimony. The government also relied on MC's testimony to show that after assaulting her, the appellant left her bed and moved to AS's bed where he assaulted AS. Casting doubt on both witnesses' credibility, ability to perceive, and ability to identify the assailant was very important to the appellant's case.

The expected cross-examination would not have been cumulative because only AS and MC could answer the questions about drugs and the meaning and effect of the text messages. Other than the text messages, there was no other evidence to determine whether AS and MC were under the influence of an illicit drug during the assault. However, with regard to the ability of the witnesses to perceive the events occurring around them, the record clearly supports the fact that AS, MC, and the appellant were intoxicated and tired at the time of the assaults.

The appellant was otherwise permitted to cross-examine AS and MC to expose inconsistencies in their testimony, bias, and motive to lie. Trial defense counsel impeached AS exposing her frequent use of her roommate's identification to buy alcohol and gain admittance to clubs. Using a text message exchange between AS and MC, the defense counsel was able to show that on the evening immediately prior to the assault, AS purchased alcohol at a liquor store and that AS lied to NCIS about how the alcohol was purchased. AS was confronted with her unduly familiar relationship with the second lieutenant UVA to whom she reported her assault. Finally, AS was confronted with the counterintuitive facts that she never told the appellant to stop touching her and she told him to leave because her bed was too small. As for MC, she was confronted with her inconsistent statements to local law enforcement, NCIS, the sexual assault forensic examiner (SAFE) nurse, and the crisis response interviewer regarding her description of AS's room, how many times the appellant penetrated her with his penis, whether he was wearing a

---

[25] Forensic evidence showed the presence of male DNA, not the appellant's, on both AS's genitals and MC's underwear. The appellant was acquitted of sexual assault by penetrating MC's vulva with his penis.

condom or not, and what she did when the appellant left her bed and moved towards AS's bed. Additionally, MC was cross-examined on her underage drinking and fraternization with AS.

Nevertheless, the government's case was strong despite the effective cross-examination of AS and MC. The appellant admitted to NCIS that he had sexual intercourse with MC despite the absence of any flirting, kissing, dirty dancing, or any other conduct that would lead him to believe that either AS or MC was interested in him sexually. The appellant surmised that he used a condom because the one he carried in his wallet was gone. MC woke up later that morning and immediately went to the appellant's room to confront him. MC testified that the appellant "looked scared"[26] and told MC that he "thought it was a dream."[27] Meanwhile AS immediately reported the sexual assault to her unit UVA. Later that same morning, the appellant texted AS stating that he was "scared," "thinking about killing" himself, and that he was "so sorry."[28] The appellant next texted his best friend that he "did the dumbest shit ever"[29] and "thought it was all a [f***ing] dream."[30] The appellant also drafted an apology note to MC stating "I apologize for my actions that night. I feel embarrassed, disgusted, and pitiful for even thinking it was the right thing to do."[31] Finally, AS and MC gave statements to the crisis response interviewer, SANE nurse, local law enforcement, and NCIS that were consistent on the material facts of the assault.

Given the over-all strength of the government's case, the appellant's otherwise effective cross-examination, and the relatively limited contribution to undercutting the credibility of AS and MC even if "the damaging potential of the cross-examination were fully realized," *Collier*, 67 M.J. at 355 (quoting *Van Arsdall*, 475 U.S. at 684), the military judge's error did not contribute to a finding of guilty because it was relatively "unimportant in relation to everything else the jury considered on the issue" of credibility and ability to perceive. *Id.* (quoting *Yates v. Evatt*, 500 U.S. 391 (1991), *overruled on other grounds* by *Estelle v. McGuire*, 502 U.S. 62, 72 n4 (1991)). Likewise, we are not compelled to conclude that even if AS and MC were also under the influence of an illicit drug while being sexually assaulted or that their credibility

---

[26] R. at 677.

[27] *Id.*

[28] R. at 651; PE 2.

[29] R. at 651; PE 2.

[30] R. at 630-31; PE 7 at 1.

[31] PE 10.

was further diminished because they exchanged text messages about getting high and then lied about remembering the text message conversation, it would have "tipped the credibility balance" any more in favor of the appellant. *Moss*, 63 M.J. at 239. We find that the government has carried its burden to show that the military judge's erroneous limitation on the cross-examination of both AS and MC was harmless beyond a reasonable doubt.

## III. CONCLUSION

After careful consideration of the record of proceedings and the briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence are AFFIRMED.

Senior Judge FULTON and Judge CRISFIELD concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

11