# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WILSON, TOZZI, and CAMPANELLA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DANIEL C. BAILEY**
**United States Army, Appellant**

ARMY 20130383

Headquarters, U.S. Army Signal Center of Excellence and Fort Gordon
Tiernan P. Dolan, Military Judge
Colonel John P. Carrell, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Jonathan F. Potter (argued); Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA (on brief); Captain Heather L. Tregle, JA; Lieutenant Colonel Jonathan F. Potter, JA (on reply brief).

For Appellee:  Captain Scott L. Goble, JA (argued); Major A.G. Courie III, JA; Major John K. Choike, JA; Captain Scott L. Goble, JA (on brief).

18 November 2015

----------------------------------
OPINION OF THE COURT
----------------------------------

WILSON, Chief Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of violating a lawful general regulation, wrongful use of "Spice," manslaughter, and negligent homicide, in violation of Articles 92, 119, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 919, and 934 (2006) [hereinafter UCMJ].[1]  The panel sentenced appellant to two years of confinement and a dishonorable discharge.  The convening authority approved the adjudged sentence.

---

[1] The panel acquitted appellant of one specification of Article 112a, UCMJ (wrongful use of morphine) and one specification of Article 118, UCMJ (murder).

This case is before us for review pursuant to Article 66, UCMJ.[2] Appellant raises three assignments of error – all of which warrant discussion, and one of which warrants relief. We find the matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) to be without merit.

In his first assigned error, appellant argues the military judge erred by instructing the panel that appellant could be convicted of manslaughter and negligent homicide if appellant's actions were a contributing cause to the resulting death instead of a "but for" cause. We disagree that the military judge's instruction, in the full context in which it was given, amounted to error.

Next, appellant alleges his Sixth Amendment right to confrontation was violated when the military judge allowed the testimony of a government expert who did not perform any of the toxicology tests on appellant's blood sample. We find the admission of the expert's testimony did not violate appellant's right to confrontation because her testimony was not testimonial hearsay. Rather, we conclude the expert undertook a sufficient degree of independent analysis and arrived at her own conclusions based on her own knowledge and experience after reviewing the computer generated non-testimonial laboratory data.

Lastly, appellant argues his convictions for both negligent homicide and manslaughter constitute an unreasonable multiplication of charges. We agree and will take appropriate action in our decretal paragraph.

## BACKGROUND

On 12 December 2012, around the time many employees were leaving work for the day, appellant was driving his Chevrolet Avalanche, a five to six passenger sport utility truck, in the far right lane of a four-lane thoroughfare at Fort Gordon, Georgia. The weather was clear, the pavement dry, and the road straight and unobstructed. As he drove, appellant abruptly crossed three lanes into oncoming traffic and smashed into the driver's side of a Dodge Durango traveling in the opposite direction. The Durango had been traveling steadily forward within the posted speed limit when it was struck by appellant. Appellant's vehicle then deflected off the Durango, traveled over a curb, and onto the sidewalk where a group of pedestrians were walking.

The pedestrians scrambled to move out of the way of appellant's truck. One man, directly in the truck's path, however, did not escape. Appellant's vehicle struck Mr. MM – the truck's right front tire ran over his upper body, severing his

---

[2] Oral argument in this case was heard in New York, New York on 18 September 2015 at the Fordham University School of Law as part of the Outreach Program of the United States Army Court of Criminal Appeals.

spine and crushing his vital organs; the back right tire ran over his legs. The truck proceeded to smash into a fence and came to rest on top of Mr. MM's body, with the vehicle transmission still in drive and appellant still behind the steering wheel.[3]

Numerous onlookers immediately ran to assist. One witness went to the driver's side of the truck, reached across appellant, placed the truck in park and removed the keys from the ignition. Four separate eyewitnesses present in the immediate aftermath of the event testified that appellant looked and acted as though he was high or intoxicated. Upon seeing appellant's behavior, one witness stood next to appellant's car door interacting with appellant and preventing him from leaving the vehicle until emergency crews arrived. "Confused," "disoriented," and "incoherent" were some of the words used by witnesses to describe appellant. Witnesses also testified appellant was giggling, drooling, smirking, and mumbling at the scene. One witness testified appellant asked confusedly, "I didn't hurt anybody, did I?"

Mr. MM succumbed to his injuries shortly after the event. The coroner testified that Mr. MM's death resulted from the blunt force trauma from the vehicle hitting him and crushing his vital organs.

After the incident, a Military Police Officer conducted a vehicle search and found two empty "Spice" packages inside appellant's truck.[4]

When emergency services arrived, appellant was taken to the hospital where he consented to having his blood drawn. Appellant's blood sample later tested positive for JWH 122 and JWH 210—two metabolites consistent with Spice (synthetic marijuana) use.

At trial, to admit the results of appellant's blood test, the government first called those in the chain of custody who handled appellant's blood sample and sent it to the Armed Forces Medical Examiner System (AFMES) for evaluation. A forensic toxicologist from AFMES testified that because AFMES did not have the ability to test for synthetic marijuana, appellant's sample was sent to NMS laboratory for analysis.[5]

---

[3] The entire event was captured on video via government surveillance cameras positioned along the route appellant traveled. The video was introduced as evidence by the government.

[4] "Spice" refers to a wide variety of herbal and synthetic mixtures that produce experiences similar to marijuana (cannabis). The active ingredients in Spice are synthetic (or designer) cannabinoid compounds.

[5] NMS Labs is a private civilian forensic laboratory.

The government then called Dr. SK, a forensic toxicologist and expert in synthetic cannabinoid testing, who worked as a team leader at NMS Lab. She testified as to the tests performed on appellant's blood, NMS Lab's in-processing procedures and the chain of custody and quality assurance protocols. While Dr. SK did have oversight and supervisory responsibility over the synthetic marijuana testing process at NMS Lab, she neither observed nor performed any of the tests on appellant's blood herself.

During appellant's case in chief, the defense called an expert in the field of accident investigations and reconstruction. The expert testified that the Durango driver took no action to avoid the collision and "drove it to the collision point" without applying the brakes. The expert concluded that if the Durango driver had applied her brakes 1.6 seconds prior to impact, Mr. MM would not have been struck by appellant's vehicle and the accident as it unfolded would not have occurred.

## LAW AND DISCUSSION

### 1. Proximate Cause of the Death

The military judge "bear[s] the primary responsibility for assuring that [panel members] are properly instructed on the elements of the offenses raised by evidence as well as potential defenses and other questions of law." *United States v. Graves*, 1 M.J. 50, 53 (C.M.A. 1975); *see also United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). Whether a panel was properly instructed is a question of law we review *de novo*. *United States v. Schroder*, 65 M.J. 49, 54 (C.A.A.F. 2007). We review "the propriety of an instruction . . . in the context of the entire charge and determine whether the instruction completed its purpose." *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012). Failure to provide correct and complete instructions to members can amount to a denial of due process. *See United States v. Jackson*, 6 M.J. 116, 117 (C.M.A. 1979).

Here, the military judge instructed the members that they could find appellant guilty of involuntary manslaughter if they found "Mr. MM's death resulted from the act of [appellant] hitting the said [Mr. MM] on the body with the motor vehicle . . . ;" and "that this act amounted to culpable negligence." The military judge defined culpable negligence as:

> a degree of carelessness greater than simple negligence. "Simple negligence" is the absence of due care. The law requires everyone at all times to demonstrate the care for the safety of others that a reasonably careful person would demonstrate under the same or similar circumstances; this is what "due care" means. "Culpable negligence" is a negligent act or failure to act accompanied by a gross,

4

reckless, wanton, or deliberate disregard for the
foreseeable results to others.

*See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook
[hereinafter Benchbook], para 3-44-2(d) (1 Jan. 2010).

The military judge also instructed the panel that appellant may be found guilty
of involuntary manslaughter, only if the panel is satisfied beyond a reasonable doubt
that the act of the accused which caused the death amounted to "culpable
negligence" and was the "proximate cause." Reading from the Benchbook, the
military judge defined proximate cause as follows:

> Proximate cause means that the death must have been the
> natural and probable result of the accused's culpably
> negligent act. The proximate cause does not have to be
> the only cause, but it must be a contributory cause which
> plays an important part in bringing about the death. If the
> death occurred only because of some unforeseeable,
> independent, intervening cause which did not involve the
> accused, then the accused may not be convicted of
> involuntary manslaughter. The burden is on the
> prosecution to prove beyond a reasonable doubt that there
> was no independent, intervening cause and that the
> accused's culpable negligence was the proximate cause of
> the victim's death.

*See* Benchbook, para. 3-44-2(d)(n.1).

The military judge then instructed the panel on the law relating to multiple
persons and causes as follows:

> It is possible for the conduct of two or more persons to
> contribute, each as a proximate or direct cause, to the
> death of another. If the accused's conduct was a
> proximate or direct cause of the victim's death the accused
> will not be relieved of criminal responsibility just because
> some other person's conduct was also a proximate or
> direct cause of the death. The accused will, however, be
> relieved of criminal responsibility for the death of the
> victim if the death was the result of some unforeseeable,
> independent, intervening cause which did not involve the
> accused. If the victim died only because of the
> independent, intervening cause, the act of the accused was
> not the proximate cause of death, and the accused cannot

5

> be found guilty of negligent homicide. The burden is on the prosecution to establish beyond a reasonable doubt that there was no independent, intervening cause and that the accused's negligence was a proximate cause of the death of the victim.

*See* Benchbook para. 3-44-2(d)(n.1).

Lastly, the military judge instructed the panel on the defense of accident as follows:

> Accident is a complete defense to the offense of murder, involuntary manslaughter, and negligent homicide. If the accused was doing a lawful act in a lawful manner free of any negligence on his part, and an unexpected death occurs, the accused is not criminally liable. The defense of accident has three parts. First, the accused's acts resulting in the death must have been lawful; second, the accused must not have been negligent. In other words, the accused must have been acting with the amount of care for the safety of others that a reasonably prudent person would have used under the same or similar circumstances; Third, the death must have been unforeseeable and unintentional. . . .

*See* Benchbook para. 5-4(n.2).

Appellant argues on appeal that the military judge's instructions were not consistent with the Supreme Court holding in *Burrage v. United States*, 134 S. Ct. 881 (2014), which requires "but for" causation for an injury or death in a criminal case.[6] The issue in *Burrage* was actual causation. *Id.* at 887. Burrage sold heroin to Banka, a long-time drug user, who died after a night in which he used several drugs including the heroin obtained from Burrage. Burrage was charged with drug distribution under a provision containing a mandatory minimum sentence when "death or serious bodily injury results from the use" of the controlled substance. *Id.* at 885. At trial, medical experts testified that it was impossible to determine whether the heroin *alone* killed the decedent, or if it was merely a contributing factor that was unable to have caused the death without the inclusion of other drugs. The statute did not define the term "results from." The Court held that "where use

---

[6] *Burrage* was decided subsequent to appellant's court-martial. As with all opinions of our superior courts applicable to the practice of military justice, the relevant provisions of the Benchbook should be re-evaluated in light of the Supreme Court's holding in *Burrage*.

of the drug distributed by the defendant is not an *independently sufficient cause* of the death or bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a *but-for* cause of the death or injury." *Id.* at 892 (emphasis added).

Writing for the majority, Justice Scalia reviewed basic principles of actual causation noting that a statute providing for liability when a thing "results from" an act or omission usually "requires proof that the harm would not have occurred . . . but for [] the defendant's conduct." *Id.* at 887-88. "The Model Penal Code reflects [a] traditional understanding" of these words, stating that "conduct is the cause of a result if it is an antecedent but for which the result in question would not have occurred." *Id.* at 888 (quoting ALI, Model Penal Code, §2.03(1)(a)) (internal quotation marks omitted). This, then, "represents *the minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result." *Id.* (internal quotation marks and citations omitted). While some states consider an act or omission a cause-in-fact if it was a "substantial" or "contributing" factor in producing a result, the Court declined to adopt this interpretation. *Id.* at 890.

The Supreme Court found in *Burrage* there was an instructional error in that the drug given to the victim by Burrage was not an "*independently sufficient cause of the victim's death or serious bodily injury.*" *Id.* at 892 (emphasis added). However, "[t]o be proximate, an act need not be the sole cause of death, nor must it be the immediate cause—the latest in time and space preceding the death. But a contributing cause is deemed proximate only if it plays a material role in the victim's decease." *United States v. Romero*, 1 M.J. 227, 230 (C.M.A. 1975); *see also United States v. Gordon*, 31 M.J. 30, 35 (C.M.A. 1990). Statutory phrases like "because of" should not be interpreted to mean "solely because of."

> Even though [someone is] criminally negligent . . . it is possible for negligence of . . . another to intervene between his conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation. This is true, however, only in situations where the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result.

*United States v. Cooke*, 18 M.J. 152, 154 (C.M.A. 1984) (quoting R. Perkins, *Criminal Law*, 698-701 (2d ed. 1969)). That is simply not the case here. Unlike in *Burrage*, the facts here support that the victim would have lived but for appellant's conduct. The Durango driver's action of not braking to prevent the collision as it occurred is neither an independent nor superseding proximate cause. It is not a

cause at all; it is the effect in a cause-and-effect chain of events. The Durango was traveling in a lawful and foreseeable fashion. The collision and injuries caused to the victim were wholly contingent on appellant's acts which caused those events.

With regard to the instructions as they were provided to the panel, we do not find error. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughton*, 414 U.S. 141, 146-147 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)); *see also Boyde v. California*, 494 U.S. 370, 378 (1990). While the words "contributing cause" were used, the military judge qualified this by instructing the panel that the burden is on the government to establish beyond a reasonable doubt that there was no independent, intervening cause. The military judge's language both before and following the particular words in issue offer, in context, a correct view of the law. Pursuant to the military judge's instructions, the panel concluded beyond a reasonable doubt that the actions of the Durango driver were not an intervening cause—in other words, not an *independently sufficient cause of the victim's death or serious bodily injury*.

Assuming, arguendo, an instructional error which raises constitutional implications did occur, we test the error "for prejudice using a harmless beyond a reasonable doubt standard." *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014) (internal quotation marks and citations omitted). "[T]he test for determining whether [the] constitutional error is harmless is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Assuming the military judge's instructions were inconsistent with the holding in *Burrage*, we find such error to be harmless beyond a reasonable doubt. This is *not* a *Burrage* case. Here, there was no independent act by the Durango. Appellant is faulting the Durango driver for not having a sufficient reaction to appellant's acts—that is the very definition of a *dependent* act.

The military judge's instructions on proximate cause, while not precisely congruent with the holding in *Burrage*, were sufficient to convey the same meaning as "but for" causation. Even if the "but for" instruction were given, it is clear beyond a reasonable doubt that the panel would have found appellant to be the "proximate cause" of the death in this case. Appellant cannot escape the overwhelming evidence presented by the government.

*B. Confrontation Clause*

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion "consider[ing] the evidence in the light most favorable to the prevailing party." *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)

(internal quotation marks omitted). First, however, we must decide whether the evidence is constitutionally admissible as nontestimonial hearsay. Whether evidence is testimonial hearsay is a question of law reviewed *de novo*. *United States v. Tearman*, 72 M.J. 54, 58 (C.A.A.F. 2013).

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Therefore, "no testimonial hearsay may be admitted against a criminal defendant unless: (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination." *United States v. Blazier,* 69 M.J. 218, 222 (C.A.A.F. 2010) [hereinafter *Blazier II*] (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

Under both the Confrontation Clause and the Military Rules of Evidence, "machine-generated data and printouts are not statements and thus not hearsay— machines are not declarants—and such data is therefore not 'testimonial.'" *Id*. at 224. Furthermore, in *Blazier II*, the United States Court of Appeals for the Armed Forces (C.A.A.F.) explained:

> an expert may, consistent with the Confrontation Clause and the rules of evidence, (1) rely on, repeat, or interpret admissible and non-hearsay machine-generated printouts of machine-generated data . . . and/or (2) rely on, but not repeat, testimonial hearsay that is otherwise an appropriate basis for an expert opinion, so long as the expert opinion arrived at is the expert's own.

*Id*. at 222 (internal citations omitted).

Our superior court has also provided recent guidance on distinguishing between testimonial and nontestimonial statements. *United States v. Katso*, 74 M.J. 273 (C.A.A.F. 2015); *Bennett*, __ M.J. __, 2015 CAAF LEXIS 673 (C.A.A.F. 27 Jul. 2015) (sum. disp.). In analyzing the issue, the C.A.A.F. asked "whether it would 'be reasonably foreseeable to an objective person that the purpose of any individual statement . . . is evidentiary,' considering the formality of the statement as well as the knowledge of the declarant." *Katso*, 74 M.J. at 279 (quoting *Tearman,* 72 M.J. at 58). "[C]hain of custody documents and internal review worksheets [are] not testimonial because an objective witness would reasonably believe that the documents [are] filled out for 'internal control, not to create evidence' and because they 'lack[ed] any indicia of formality or solemnity'" *Id*. (quoting *Tearman,* 72 M.J. at 59-61). However, "a signed, 'formal, affidavit-like' document certifying the integrity of the sample and compliance with protocol [is] testimonial" (i.e., signed memorandum reports of drug testing). *Id*. (quoting *United States v. Sweeney*, 70 M.J. 296, 299, 304 (C.A.A.F. 2011)); *see also id.* ("signed declarations served an

'evidentiary purpose' because they 'summarize[d] and clearly set forth [an] "accusation"' and were generated in response to a command request") (quoting *United States v. Blazier*, 68 M.J. 439, 443 (C.A.A.F. 2010)).

If the expert did rely in some way on testimonial hearsay, then the next question is "whether [the expert] had sufficient personal knowledge to reach an independent conclusion as to the object of his testimony and his expert opinion." *Katso*, 74 M.J. at 280. "[T]he admissibility of the expert's opinion hinges on the degree of independent analysis the expert undertook in order to arrive at that opinion." *Id.* at 282 (citing *Blazier II*, 69 M.J. at 224-25). "[E]xperts may not 'act as a conduit for repeating testimonial hearsay,' . . . by acting as a 'transmitter' instead of communicating an 'independent judgment.'" *Id.* (quoting *Blazier II*, 69 M.J. at 225). An expert witness who repeated statements in an inadmissible cover memoranda violates the Confrontation Clause. *Blazier II*, 69 M.J. at 226. A witness should instead proffer an expert opinion upon such things as machine-generated data, knowledge, education, experience, and his or her review of the testing reports alone. *Id.* We also know an expert "need not necessarily have personally performed a forensic test in order to review and interpret the results and data of that test." *Id.* at 224-25. Experts may review and rely on the work of others, including laboratory testing, as long as their opinions are their own. *Id.* at 224.

In this case, the facts show that the testimony of Dr. SK did not violate appellant's right to confrontation. Dr. SK not only established her independent bona fides as an expert forensic toxicologist in the field of synthetic marijuana testing, but she also established her familiarity with the NMS Labs process and procedures for said testing and quality control. As a result of her position at NMS Labs, Dr. SK was familiar with the procedures and quality assurance practices used at NMS Labs. While she did not conduct the actual test on appellant's sample herself, she was amply able to interpret the computer generated data produced by the testing machine and therefore arrive at her own conclusions. Dr. SK described in detail the testing processes and independently drew her own conclusions—making her neither a surrogate nor a conduit for someone else's testimony. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2715-16 (2011); *see also Blazier II*, 69 M.J at 225. Additionally, appellant fully availed himself of the opportunity to cross-examine Dr. SK and test the basis of her knowledge both scientifically and procedurally. We conclude that even if Dr. SK had reviewed some testimonial hearsay in the process of analyzing appellant's case file before arriving at her own opinion, her ultimate opinion was based on her knowledge, experience, and her thorough review of the case file. *See Katso*, 74 M.J. at 283-84; *Bennett*, __ M.J. at __, 2015 CAAF LEXIS 673, at *1. As a result, we conclude the admission of her testimony did not violate appellant's right to confrontation and therefore, find the military judge did not abuse his discretion by admitting her testimony.

## C. Unreasonable Multiplication of Charges

In the Specification of Charge IV, appellant was charged with involuntary manslaughter in violation of Article 119, UCMJ.  The specification alleged appellant did "on or about 12 December 2011, by culpable negligence, unlawfully kill [Mr. MM] by hitting the said [Mr. MM] on the body with a motor vehicle."  Additionally, in the Specification of Charge V, appellant was charged with negligent homicide in violation of Article 134, UCMJ.  That specification alleged appellant did, "on 12 December 2011, unlawfully kill [Mr. MM] by negligently hitting the said [Mr. MM] on the body with a motor vehicle, which was to the prejudice of good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces."

At trial, the defense moved to have one of the charges dismissed because the gravamen of both offenses was the same act.  The military judge agreed that the two charged offenses were based on the same act, but also found negligent homicide was not a lesser-included offense of involuntary manslaughter.  As such, he did not dismiss either charge but merged the two offenses for sentencing.

Pursuant to Rule for Courts-Martial 307(c)(4), "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."  This principle is well established in military law.  *United States v. Quiroz*, 55 M.J. 334, 336-37 (C.A.A.F. 2001).  Thus, even where two charges are not technically multiplicious[7] under the elements test, "the prohibition against unreasonable multiplication of charges provides courts-martial and reviewing authorities with a traditional legal standard—reasonableness—to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system."  *Id*. at 338.

In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;

---

[7] Appellant's separate convictions for negligent homicide and involuntary manslaughter also raise concerns regarding "unit[s] of prosecution" for the death of a single victim.  *Bell v. United States*, 349 U.S. 81, 83 (1955); *see United States v. Burke*, ARMY 20120448, 2015 CCA LEXIS 392, at *14 (Army Ct. Crim. App. 26 Feb. 2015) (mem. op.).

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Id*.

In regards to the first *Quiroz* factor, appellant raised this issue at trial, and we, therefore, find this factor favors appellant. As to the second factor, each charge is not aimed at distinctly separate criminal acts, rather both penalize the killing of Mr. MM. As to the third factor, appellant stands convicted of two acts of causing the death of the same person—thus exaggerating appellant's criminal liability. Because the military judge instructed the panel to merge the two offenses for sentencing, the fourth factor weighs in favor of the government because the specifications did not unreasonably increase appellant's punitive exposure. Lastly, with regards to the fifth *Quiroz* factor, we do not find in appellant's favor because there is no evidence of prosecutorial overreaching or abuse. Instead, the government may have initially utilized alternative theories in an attempt to cover all its bases. *See United States v. McMurrin*, 70 M.J. 15 (C.A.A.F. 2011).

Upon weighing the *Quiroz* factors, we find an unreasonable multiplication of charges in this case. Accordingly, we will take appropriate action in our decretal paragraph.

## CONCLUSION

The finding of guilty of the Specification of Charge V (negligent homicide) is set aside and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape as the military judge merged the negligent homicide and involuntary manslaughter charges for sentencing purposes. The gravamen of appellant's misconduct remains

unchanged. After reassessing the sentence based on the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge TOZZI and Judge CAMPANELLA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court